(113 So. 792)

No. 28592.

**JAMES v. CENTRAL SAV. BANK & TRUST CO. et al.**

July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Mortgages ⬅25(6)—In suit to enjoin foreclosure sale, evidence held to show adequate consideration for mortgage notes.**

   In suit to enjoin sale of land under foreclosure of mortgage, evidence *held* to show full and adequate consideration for notes representing mortgage indebtedness.

2. **Mortgages ⬅504—One foreclosing mortgage held not guilty of bad faith, though renewal notes evidencing principal obligation, to which mortgage notes were attached as collateral, indicated latter were past due when pledged.**

   One foreclosing mortgage *held*, in suit to enjoin sale under executory process, not guilty of bad faith, though notes evidencing principal obligation, to which mortgage notes were attached as collateral, indicated mortgage notes were past due when pledged, where notes to which collateral was attached were renewals.

3. **Mortgages ⬅319(3)—In suit to restrain foreclosure sale, evidence held insufficient to show payment of mortgage notes.**

   In suit to restrain sale of mortgaged land on foreclosure evidence *held* insufficient to sustain plaintiff's allegation that notes on which foreclosure proceedings had been brought were paid.

4. **Mortgages ⬅504—Holder of oil lease on mortgaged property, appearing in opposition to foreclosure proceedings, held to have actual knowledge thereof, and to have submitted to court's jurisdiction.**

   Where holder of oil, gas, and mineral lease on mortgaged property appeared in opposition to foreclosure proceedings, his actual knowledge of proceedings were shown, and submission to jurisdiction of court accomplished, so that he cannot complain, in suit to enjoin sale under executory process, that he should have been made party defendant and notified of foreclosure proceedings.

Suit by T. L. James against the Central Savings Bank & Trust Company and others. A temporary restraining order was recalled, preliminary injunction refused, and judgment rendered against plaintiff, and he applies for writs of certiorari and prohibition. Application denied.

*Tobin R. Hodge*, of Rayville, and *R. H. Oliver, Jr.*, of Monroe, for relator.

*Warren Hunt*, of Rayville (George Wesley Smith, of Rayville, of counsel), for respondents Central Savings Bank & Trust Co. and others.

ROGERS, J. This is a suit to enjoin the sale under executory process of a certain tract of land in the parish of Richland. After a hearing on the application, the temporary restraining order which had been issued was recalled, the preliminary injunction asked for was refused, and judgment for $100 as damages for attorney's fees for dissolving the restraining order was rendered against plaintiff. The proceeding is before us for review by virtue of an order issued under our supervisory power.

In the year 1916, the tract of land in question was acquired by purchase by one D. H. Prothro. As part of the consideration for the sale, the vendee executed 6 notes, for $250 each, payable annually after date. In 1917, Prothro sold the property to J. W. Willis, Jr., for $4,200, of which amount $1,000 was paid in cash, 5 of the 6 notes, for $250 each, given by the vendor to his vendors were assumed by the vendee, and the balance of the purchase price was represented by additional notes. All these notes were secured by mortgage on the property. On December 1, 1917, Willis sold Robert B. Jackson and George Jackson a portion of the land for a consideration of $6,800, of which $1,000 was paid in cash and the balance was evidenced by 5 notes, of $1,000 each, and one note, of $800, payable, respectively, in one to six years after date. On December 22, 1917, Willis sold to the Jacksons the remaining portion of the tract of land. The consideration for this

sale was $3,500, of which $500 was paid in cash, and the credit portion was evidenced by 6 notes, of $500 each, payable, respectively, in one to six years after date. In November, 1918, George Jackson transferred his undivided one-half interest in the property to his co-owner, who assumed the mortgage indebtedness against the property, consisting of 5 notes, for $1,000 each, one note, for $800 and 6 notes, of $500 each. The outstanding notes of Prothro were not assumed by the vendee, nor were they assumed by the Jacksons when they purchased the land from Willis, although they constituted a lien against the property.

In August, 1922, Robert B. Jackson borrowed $2,500 from the Federal Land Bank, which he secured by mortgage upon this tract of land. At the time the loan was secured all outstanding mortgages were canceled on the records. After executing this mortgage, the mortgagor gave another mortgage to M. L. McCoy & Sons to secure the pre-existing mortgage indebtedness, which had been canceled, together with another debt due the mortgagees. The mortgage in favor of McCoy & Sons was for $10,000, represented by 20 notes, of $500 each, and payable annually. It was recorded subsequent to the mortgage of the Federal Land Bank.

On February 9, 1923, McCoy & Sons borrowed from the Central Savings Bank & Trust Company, of Monroe, La., the sum of approximately $10,000, and they secured the loan by pledging, together with other paper, the $10,000 of mortgage notes which they had received from Robert B. Jackson.

On November 4, 1926, Tobin R. Hodge, trustee, purchased from Jackson an oil, gas, and mineral lease on the property, and on November 8, 1926, he assigned the lease to T. L. James.

On January 20, 1927, the Central Savings Bank & Trust Company filed a petition in which it prayed for the foreclosure of the $10,000 mortgage via executiva, asking that the property be sold for cash to satisfy the first 4 notes, which had matured, and on terms of credit to meet the unmatured notes.

Under these proceedings, the property was advertised for sale for March 5, 1927, and on the day previous thereto this suit was instituted by T. L. James, the owner of the oil, gas, and mineral lease granted on said property by Robert B. Jackson. The parties defendant are the sheriff of the parish of Richland, Central Savings Bank & Trust Company, plaintiff in executory process, M. L. McCoy & Sons and the individual members of said firm, and Robert B. Jackson, defendant in executory process.

The petitioner alleged, substantially, payment of the notes sued on; that the bank acquired them after maturity, and was chargeable with notice of his lease; that the sole purpose of the proceeding was to destroy said lease; that the executory process was obtained without notice to him, and does not constitute due process of law. He prayed for a temporary restraining order, which issued, prohibiting the sale; for a temporary injunction, to be made permanent in due course; that the mortgage be decreed to be void, and, if not void, that it be decreed inferior to his lease; that, if the notes be found to be valid and superior to his lease, he have a separate appraisement of said lease; and, in the event the avails of the sale be more than sufficient to satisfy the mortgage indebtedness, that he be paid the value of his lease by priority over the mortgagor.

The district judge, after recalling the temporary restraining order and refusing the temporary injunction, ordered that plaintiff be allowed an appraisement of his lease, and, after satisfying all mortgages against the land, that the residue, if any, be applied to the lease in accordance with the appraisement.

The mortgagor is not before the court con-

testing, or even questioning, the correctness of the mortgage indebtedness. The judge a quo concluded, from the evidence adduced, that on the date of the execution of the mortgage he owed the mortgagees in excess of $10,000. Our examination of the evidence has led us to the same conclusion.

[1] As disclosed by the record, the facts are that Robert B. Jackson had been dealing for a number of years with the mercantile firm of M. L. McCoy & Sons, at Alto, La. In the month of November, 1918, two of the mortgage notes, one for $1,000 and one for $500, were about to mature, and Jackson, then the owner of the entire property and the assumer of the obligations, borrowed a sufficient sum of money from the McCoy firm to retire them. At the request of Jackson, the McCoys surrendered the notes to the clerk of court for cancellation, which was duly noted on the records in the clerk's office. Subsequently McCoy & Sons purchased the remaining and outstanding notes, with the exception of the Prothro notes, about their knowledge of which there is some dispute.

In December, 1919, two of the obligations, aggregating $1,500, matured and were canceled on the record.

In August, 1922, Robert B. Jackson desired to obtain a loan of $2,500 from the Federal Land Bank, and to secure it by a mortgage on the property. At this time the outstanding mortgage indebtedness was $6,800, exclusive of interest, represented by four notes, of $250 each, given by Prothro to his vendors; three notes, of $1,000 each, and one note, of $800, executed by the Jacksons in the first purchase of part of the land; and four notes, of $500 each, which they gave when they purchased the remainder of the property. In addition to this, Robert B. Jackson was indebted to McCoy & Sons in the sum of $3,000, which they had advanced in taking up and canceling the notes maturing in December, 1918 and 1919.

McCoy & Sons claim that it was at this time they first learned of the existence of the outstanding Prothro notes. At any rate, they acquired these notes, and thereafter had in their possession mortgage obligations aggregating $6,800 and a claim of $3,000 against Robert Jackson for money advanced, or a total of $9,800, exclusive of interest.

The loan of $2,500 was obtained from the Federal Land Bank, and the mortgage notes held by McCoy & Sons were canceled of record. The net proceeds of the loan, after deducting the expenses attached thereto, were $2,342.65. This amount was paid by Jackson to McCoy & Sons, and in addition thereto, in order to secure the pre-existing indebtedness above this amount, Robert B. Jackson executed in favor of his said creditors the mortgage of $10,000 hereinbefore referred to. The debtor never paid, apparently, any interest whatever on his obligations. These obligations, at the time they were funded into the mortgage, amounted in principal and interest to a sum in excess of $13,000, which was reduced, by crediting the avails of the mortgage in favor of the Federal Land Bank, to approximately $10,000, the amount for which the new mortgage was executed.

In these circumstances, it is clear that there was a full and adequate consideration for the notes representing the mortgage indebtedness of Robert B. Jackson for $10,000.

[2] We are compelled to hold, also, against the attack on the bona fides of the Central Bank & Trust Company. It is true, the notes evidencing the principal obligation of McCoy & Sons, and to which the mortgage notes are attached as collateral, indicate that the mortgage notes were past due at the time they were pledged to the bank. But the uncontradicted evidence on this point is that the notes to which the collateral is attached represent renewals merely of notes executed on February 9, 1923, the date on which the original obligation was incurred. The notes of Rob-

ert B. Jackson, pledged as collateral, have been in the possession of the bank continuously from that time until the date of the institution of the proceedings for executory process.

[3] Plaintiff has failed to sustain his allegation that the notes upon which the foreclosure proceedings were brought have been paid. He offered no direct testimony on the point. He contends, however, that the proceeds of the loan from the Federal Land Bank must have been applied to the extinguishment of the first five notes, of $500 each. The testimony in the record is against his contention. A member of the copartnership of McCoy & Sons declared that no part of the indebtedness had been paid to his firm. The president of the Central Savings Bank & Trust Company, pledgee, stated that nothing had been paid to his institution on account of the indebtedness, and Robert B. Jackson, the mortgagor, testified that he never paid any part of the debt to any one.

[4] Plaintiff contends that, as the holder of an oil, gas, and mineral lease on the mortgaged property, he should have been made a party defendant to, or at least should have been notified of, the proceedings to foreclose the mortgage. He argues that his lease is a servitude, and is therefore a real right; that any law permitting his property to be taken from him without notice is not due process of law, and is violative of the Fourteenth Amendment to the federal Constitution, and of a similar provision in the state Constitution.

We do not find it necessary to discuss the contention. Relator's actual knowledge was shown, and his submission to the jurisdiction of the court accomplished, when he appeared in opposition to the foreclosure proceedings.

For the reasons assigned, the rule nisi herein issued is discharged, and relator's application is denied at his cost.

O'NIELL, C. J., concurs, on the ground that the plaintiff took his mineral lease on the land subject to the mortgage which was previously recorded, and subject therefore to the right of the mortgagee to proceed via executiva against the mortgagor, under the pact de non alienando, without making the holder of the mineral lease a party to the foreclosure proceedings.